O'CONNOR BERMAN DOTTS & BANES
201 Marianas Business Plaza
1 Nauru Loop
Mail: PO Box 501969 Saipan MP 96950
Phone: 234-5684
Fax: 234-5683
E-mail: attorneys@pacific-lawyers.com

Attorneys for Plaintiff

IN THE DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| CORAZON DEAN, ) | Civ. No. 13-0020 |
| ) | |
| Plaintiff, ) | |
| ) | FIRST AMENDED |
| vs. ) | COMPLAINT |
| ) | |
| PACIFIC BELLWETHER LLC, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Corazon Dean hereby complains against the Defendant as follows:

### Jurisdiction and Venue

1. The Court has jurisdiction of this matter pursuant to the Covenant to Establish a Commonwealth of the Northern Mariana Islands In Political Union With the United States of America (Covenant) (authorizing Congress to establish this Court), 48 U.S.C. §§ 1821-22 (establishing this Court and granting it the jurisdiction of a district court of the United States), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction). Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c).

## Parties

2. Plaintiff Corazon Dean is a citizen of the Philippines residing in the CNMI.

3. Defendant Pacific Bellwether LLC is, on information and belief, a limited liability company organized and existing under the laws of the Commonwealth of the Northern Mariana Islands. It is engaged in the restaurant business and its principal place of business is Garapan, Saipan. It is doing business as Shenanigan's Restaurant.

## Facts

4. From on or about February 6, 2010, until on or about March 23, 2013, Plaintiff worked for Defendant as a cook.

5. From on or about February 6, 2010, until on or about November 28, 2011, Defendant paid Plaintiff the regular hourly wage of $5.05 per hour.

6. On or about November 28, 2011, Plaintiff and Defendant entered into a contract whereby Plaintiff was employed as a cook for an annual salary of $12,000. The contract did not specify Plaintiff's hours of work, providing instead that her working hours were to be "flexible." The contract did not specify Plaintiff's rate of pay for overtime work, providing instead that overtime payments were to be made "in line with the Company Policy." A true and correct copy of the contract is attached hereto as Exhibit A.

7. From on or about November 28, 2011, until on or about March 23, 2013, Defendant paid Plaintiff gross wages in the amount of $461.54 biweekly, regardless of the number of hours worked by Plaintiff during any given pay period.

8. Plaintiff's work duties were substantially the same both before and after entering into the contract. At all times during her employment by Defendant, her primary duty was cooking. She did not regularly exercise any managerial authority within the business.

9. At all times during Plaintiff's employment by Defendant, Plaintiff was engaged in commerce, within the meaning of the Fair Labor Standards Act of 1938, in that, *inter alia*:

   a. Plaintiff's employment with Defendant constituted the performance of a commercial contract between a CNMI company and a foreign citizen, and thus constituted foreign commerce;

   b. Employment in the CNMI under the federal CW-1 permit system, and/or its predecessor, the CNMI nonresident worker system, in which Plaintiff engaged with Defendant, constitutes foreign commerce;

   c. Plaintiff's employment required, as a regular and recurrent part of her duties, the performance of cooking services for foreign tourists traveling in international commerce, who formed a substantial part of the restaurant's regular customer base, and whose patronage was actively solicited and relied upon by Defendant;

d. Plaintiff regularly used the internet in the course and scope of her employment, particularly in the course of researching and developing recipes, and thereby engaged in interstate and/or foreign commerce.

e. The totality of the circumstances of Plaintiff's employment, and her activities in that employment, were of a type without which foreign commerce would have been impeded or impaired, and were so closely related to interstate and foreign commerce that, as a practical matter, they should be considered a part of it.

Plaintiff was also engaged in the production of goods for commerce, in that she produced meals which fueled, furthered and facilitated the international travel of foreign tourists.

10. At all times during Plaintiff's employment by Defendant, Defendant was an enterprise engaged in commerce within the meaning of the FLSA, in that, *inter alia*, it had employees handling, selling, and working on goods and materials (including but not limited to meat, vegetables, spices, and other cooking ingredients; stoves, freezers, refrigerators, and other kitchen equipment; and plates, bowls, cups, knives, forks and spoons, and other restaurant equipment) that have been moved in and produced for commerce; and, on information and belief, its annual gross volume of sales made and/or business done was not less that $500,000.

11. While employed by Defendant, Plaintiff regularly worked in excess of 40 hours per week, but was not compensated for such overtime work at a rate equal to or exceeding one and one-half times her regular rate.

4

12. The hours that Plaintiff worked, for which she was not so compensated, include hours of on-site work cooking at Shenanigan's Restaurant, as well as hours of off-site work researching, studying and preparing recipes as required by Defendant, and time that she was required to be "on-call" for work in the restaurant if needed, during which time she was required to be accessible by phone, in close proximity to the restaurant, and prepared to appear at the restaurant in condition to work, on short and mandatory notice, at unpredictable intervals.

13. On or about March 22, 2013, Plaintiff resigned from her employment. She demanded payment of her unpaid overtime and indicated that she would take legal action under United States labor laws if it was not paid. As required by her contract with Defendant, Plaintiff gave four weeks' notice of her resignation, making it effective April 19, 2013.

14. On or about March 23, 2013, Defendant terminated Plaintiff's employment effective immediately.

15. The actions of Defendant set forth in this Complaint were willful and malicious, done in bad faith for oppressive reasons.

**First Cause of Action – Payment Below Minimum Wage in Violation of FLSA**

16. Paragraphs 1-15 of the Complaint are realleged and incorporated here by reference.

17. The wages paid by Defendant to Plaintiff were below the minimum wage required by the Fair Labor Standards Act, 26 U.S.C. § 206, as applicable to the CNMI for the time periods at issue.

### Second Cause of Action – Unpaid Overtime in Violation of FLSA

18. Paragraphs 1-17 of the Complaint are realleged and incorporated here by reference.

19. Defendant's failure to pay Plaintiff for her work in excess of 40 hours per week at a rate of one and one-half times her regular wage rate violates the requirements of the Fair Labor Standards Act, 29 U.S.C. § 207.

### Third Cause of Action – Retaliation in Violation of FLSA

20. Paragraphs 1-19 of the Complaint are realleged and incorporated here by reference.

21. Defendant's termination of Plaintiff's employment was in direct response to, and in retaliation for, Plaintiff's complaint to Defendant asserting Plaintiff's legal rights under the Fair Labor Standards Act, in violation of the anti-retaliation provisions of that Act, 29 U.S.C. § 215(a)(3).

### Fourth Cause of Action – Violation of Minimum Wage and Hour Act

22. Paragraphs 1-21 of the Complaint are realleged and incorporated here by reference.

23. Defendant's failure to pay Plaintiff for her work in excess of 40 hours per week at a rate of one and one-half times her regular wage rate violates the requirements of the CNMI Minimum Wage and Hour Act, 4 CMC § 9222.

**Fifth Cause of Action – Violation of Commonwealth Employment Act**

24. Paragraphs 1-20 of the Complaint are realleged and incorporated here by reference.

25. Defendant failed to seek or obtain the approval of the CNMI Secretary of Labor for the contract described in Paragraph 6 above, in violation of the Commonwealth Employment Act, 3 CMC § 4911 *et seq*.

26. The contract did not contain provisions required by the said Act for the protection of foreign national workers such as Plaintiff, including but not limited to provisions relating to wage rates, overtime payment, and term of employment, and would not have been approved by the Secretary in its current form had such approval been sought.

**Sixth Cause of Action – Wrongful Termination**

27. Paragraphs 1-26 of the Complaint are realleged and incorporated here by reference.

28. There exists in the CNMI a public policy against retaliation by an employer against an employee for asserting his legal rights, including his right to payment of a lawful wage.

29. Defendant's termination of Plaintiff's employment in response to Plaintiff's assertion of her legal rights was wrongful, unjustified, and retaliatory, and was contrary to the above-stated public policy.

30. No overriding justification for Plaintiff's termination exists.

WHEREFORE, Plaintiff prays the Court grant her the following relief:

1. Damages for unpaid overtime, and regular wages below the lawful minimum, in an amount to be proved at trial.

2. Liquidated damages in an additional amount equal to Item 1.

3. Damages for wrongful termination in the amount of the wages she would and should have earned during the time period between March 22, 2013, and April 19, 2013.

4. Liquidated damages in an additional amount equal to Item 3.

5. Incidental and consequential damages.

6. Punitive damages.

7. Costs.

8. Attorney's fees.

9. Such other and further relief as the Court deems just and proper.

Respectfully submitted this 19th day of September, 2013.

                        O'CONNOR BERMAN DOTTS & BANES
                        Attorneys for Plaintiff

                        By:_____/s/_____
                               Joseph E. Horey

*3870-01-130912-first amended complaint*

*Employees Statement of Contract and Agreement*



Pacific Bellwether LLC
DBA Shenanigans Restaurant
Telephone No: 670-233-8324
Fax Number: 670-233-8326
Email: shenanigans@islandviewers.com
Date:11/08/2011

**CONFIDENTIAL**

Dear Mr/Ms. __CORAZON DEAN__

**STATEMENT OF CONTRACT AND AGREEMENT**

I am pleased to confirm your appointment as __Cook__ with Shenanigans Restaurant. This document outlines the Contract and Agreement which is relevant to your employment.

1. The commencement date of this contract is __Nov. 28, 2011__.

2. Your working hours will be __Flexible__.
   The Company may require you to vary the pattern of your working hours if required on a temporary or permanent basis should the needs of the post require this. Overtime payments are made in line with the Company Policy.

3. You will be subject to the terms and conditions as agreed and amended from time to time by the Company as outlined in its policies, procedures, handbooks and other relevant documents.

4. The salary is __$12,000.00__ per (✓) annum ( ) hour + __0__ housing allowance. This will be reviewed annually.

5. If the Company makes an overpayment to you to whom you are not entitled, or is more than that to which you are entitled, you agree to allow the Company to recover the overpayment by deductions from your salary or other payments due to you. Any deductions will normally be made over the same period that the overpayment was made. It is in your interests to regularly check your pay slips.

6. You will be paid bi-weekly. Your salary will be computed as $ per annum / 26 pay periods. (for example: $12,000 (per annum) / 26 (bi weekly pay period) = $561.54 less tax)

7. You are obliged to give the Company 4 weeks' notice to terminate your contract of employment. The Company is obliged to give you the statutory minimum amount of notice before terminating your contract.

8. This post is subject to the completion of a 6 month probationary period. At the end of this period if your performance is of a satisfactory standard your appointment will be made permanent. During this period, one weeks notice may be given by either party to terminate this contract.

9. You are expected to comply with the Company dress code, your manager will explain the details of this, and provide you with any relevant company policy on this.

10. Should the need for disciplinary action be deemed necessary, this will be taken in accordance with the Company Policy and Procedure.

*Employees Statement of Contract and Agreement*

11. If you have a grievance in relation to your employment, then you should follow the procedure outlined in the Company Grievance Policy and Procedure. You should initially discuss any grievance with your immediate superior.

12. You are required to report any sickness absence as soon as is practicably possible to your immediate superior, and provide certification of sickness in line with Company policy.

13. Smoking in Company premises is prohibited (except in those external areas specifically designated for that purpose). Breach of this regulation may result in disciplinary action being taken.

14. In the course of your employment you may have access to confidential material both in paper and electronic form. On no account should this information be divulged to any unauthorised person. Breaches of confidentiality will be dealt with through the Company Policy and Procedure on Disciplinary Action.

15. It is a condition of your employment that the Company is satisfied on your medical fitness to carry out your duties..

16. Your employment with the Company may be dependant upon the possession of particular qualifications or registration with a statutory Body or other Authority; evidence of this must be produced on request. Failure to produce such evidence may lead to the termination of your employment.

17. Access to all Handbooks, policies and procedures etc. is available through your manager or the Company Office, and copies can be provided on request.

If you are in agreement with the above terms and conditions please sign both copies of this statement, retain one and return the other to me.

Yours sincerely,

Bel C. Busby
Owner / General Manager
Pacific Bellwether LLC
DBA Shenanigans Restaurant

**FORM OF ACCEPTANCE: I accept this appointment on the terms and conditions stated above, and agree to the following:**

On leaving the company, I agree not to undertake provision of the same services / products as supplied by the Company either from my own business, or the employment of a competitor to the Company, for a period of two years, unless this is specifically agreed by the Company. The Company will only enforce that which is reasonable to protect it's business.

PRINT NAME: _CORAZON C DEAN_

SIGNATURE _CDean_

DATE _11/11/11_