F I L E D
Clerk
District Court
FEB 06 2014
for the Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

CORAZON DEAN,

                Plaintiff,

v.

PACIFIC BELLWETHER, LLC,

                Defendant.

Case No. 1:13-cv-00020

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

    The question of how old law applies to the Internet has often challenged courts. *See* Edward Lee, *Rules and Standards for Cyberspace*, 77 Notre Dame L. Rev. 1275, 1278, 1283–84 (2002). Undertaking the challenge, this Court addresses how use of the Internet affects coverage under the Fair Labor Standards Act ("FLSA"). It concludes that use of the Internet to download freely available recipes, without more, does not provide a basis for coverage.

    The Court also addresses another issue in flux: Does the FLSA anti-retaliation provision require showing that the employee or employer was engaged in commerce or in the production of goods for commerce? The Court holds it does not.

    For these reasons and others, the Court DENIES Defendant Pacific Bellwether's motion for summary judgment (ECF No. 7 (hereinafter "Motion")).

### I. BACKGROUND

    Plaintiff Corazon Dean is a citizen of the Philippines and a resident of the Commonwealth of the Northern Mariana Islands ("Commonwealth"). (ECF No. 4 at ¶ 2 (hereinafter "Complaint").) She worked at Defendant Pacific Bellwether's restaurant, Shenanigan's, as a cook from 2010 to 2013. (*See id.* at ¶ 4; ECF No. 11-3 at 1 (hereinafter "Dean Declaration").)

1

What Dean's duties included, besides cooking meals (ECF No. 7-1 at 5), is disputed. She contends that she was in charge of recipe development and that this duty often required using the Internet to download recipes from websites like foodnetwork.com. (*See* Dean Declaration at 1–3; ECF No. 11-5; *see also* ECF Nos. 11-7, 11-8.) Pacific Bellwether provides evidence to the contrary: Dean never participated in recipe development. (*See* ECF No. 7-1 at 4–5.)

Dean alleges that Pacific Bellwether wrongfully paid her below the minimum wage and failed to pay her overtime, as required by FLSA. (*See* Complaint at ¶¶ 12, 16–19.) Dean also alleges that she gave four weeks' notice of her resignation in March 2013, as required by her employment contract, and demanded her unpaid overtime. (*Id.* at ¶ 13.) In response, Pacific Bellwether terminated Dean's employment almost immediately. (*See id.* at ¶¶ 13–14, 20–21.) Dean alleges that this was a form of retaliation in violation of FLSA. (*See id.* at ¶¶ 20–21.)

Dean filed this action in August 2013. (ECF No. 1.) Within a month, Pacific Bellwether filed a motion to dismiss (ECF No. 3), and Dean responded by filing an amended complaint (Complaint). About a month later, Pacific Bellwether filed the motion for summary judgment under review here.

## II.  JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and § 1367 (supplemental).

## III.  STANDARD

On a Rule 56 motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering the motion, "[t]he court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d. 547, 549–50 (9th Cir. 1994). Additionally, it must

view the evidence "in the light most favorable to the opposing party." *Mourning v. Family Pubs. Serv., Inc.*, 411 U.S. 356, 382 (1973) (internal quotation marks omitted).

The moving party bears the initial burden of identifying "particular parts of materials in the record" that "demonstrate the absence of a genuine issue of material fact." Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the moving party also bears the burden of persuasion at trial, . . . it must show that 'the evidence is so powerful that no reasonable jury would be free to disbelieve it.' " *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008). If the moving party meets this burden, the non-moving party must then do similarly, except to demonstrate that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c)(1); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

## IV. DISCUSSION

The Court analyzes two questions: Can Dean bring FLSA overtime and minimum wage claims against Pacific Bellwether, and can she bring a FLSA retaliation claim?

### A. OVERTIME & MINIMUM WAGE CLAIMS

To bring a FLSA overtime or minimum wage claim, FLSA must cover either the employee's activities or the employer's activities. That is, there must be either individual coverage or enterprise coverage. *See Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914 (9th Cir. 2003), *cert. denied*, 541 U.S. 1030 (2004); *see also* 29 U.S.C. §§ 206(a), 207(a). The former focuses on the employee's activities; the latter on the employer and all its employees. Lea A. Schneider & J. Larry Stine, 1 Wage and Hour Law § 4:1.

Currently, the parties dispute both bases of coverage. With individual coverage, they disagree on whether it is satisfied. And with enterprise coverage, they disagree on whether Dean can undergo discovery on this issue. Each issue is addressed in turn.

### 1. Individual Coverage

Individual coverage for FLSA overtime and minimum wage claims require that the employee is "engaged in commerce or in the production of goods for commerce . . . ." *See* 29 U.S.C. §§ 206(a), 207(a). For brevity, the Court refers to this as the commerce requirement.

To satisfy this requirement, the "employee . . . must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.,* transportation or communication industry employees, or (ii) regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006); *Reagor v. Okmulgee Cnty. Fam. Res. Ctr.*, 501 Fed. App'x 805, 809 (10th Cir. 2012); *see also McLeod v. Threlkeld*, 319 U.S. 491, 493–98 (1943). This strict requirement effects the legislative "purpose to leave local business to the protection of the states." *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 572 (1943); *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959) ("Congress, by excluding from the Act's coverage employees whose activities merely 'affect commerce,' indicated its intent not to make the scope of the Act coextensive with its power to regulate commerce."); *Thorne*, 448 F.3d at 1266.

This doctrine has been applied within the context of foodservice. A cook—possessing the duties of cooking and caretaking—does not meet the commerce requirement. *McLeod*, 319 U.S. at 793–94; *see also Martinez v. Palace*, 414 Fed. App'x 243, 245 (11th Cir. 2011) (per curiam). This is true even where he cooks for those engaging in interstate commerce, such as railroad repairmen, see *McLeod*, 319 U.S. at 793–94; *Martinez*, Fed. App'x at 245, or foreign travelers, *Joseph v. Nichell's Caribbean Cuisine, Inc.*, 862 F. Supp. 2d 1309, 1314 (S.D. Fla. 2012) ("Whether the customers Plaintiff served at Defendant's restaurant were local or from out-of-state is immaterial to establishing individual FLSA coverage."); *Russell v. Continental Rest., Inc.*, 430 F. Supp. 2d 521, 525 (D. Md.

4

2006) (same conclusion); *cf. Thorne*, 448 F.3d at 1267 (distinguishing between goods that move "across state lines for sale"—which is commerce—and "goods that previously moved in interstate commerce for intrastate use," which is not commerce); 29 U.S.C. § 203(i) (same).

Dean is a restaurant cook, and her employer's customers at least sometimes include foreign travelers. (*See* ECF No. 1-3 at 1, 4 (hereinafter "Dean Declaration").) If that were all to this case, we could stop here, as she would not have met the commerce requirement.

But there's more. Dean also develops recipes by downloading them off foodnetwork.com and similar websites.[1] (*See id.* at 3; *see generally* ECF No. 11-5.) Does this use of the Internet satisfy the commerce requirement?

The Commerce requirement can be divided into two substantive components. The first is quantitative. The employee must regularly and recurrently use the Internet or other interstate communication device. *See Thorne*, 448 F.3d at 1266.[2] The second component is qualitative; the activity must "constitut[e] interstate commerce, not merely affect[ ] interstate commerce." *See id.*

---

[1] Pacific Bellwether argues that Dean was not authorized to develop recipes or use the Internet, so she cannot use these activities to satisfy the commerce requirement. (*See* Motion at 10–11.) But Dean provides evidence that she was authorized, and the nonmovant's evidence controls on a summary judgment motion.

If Dean's conduct truly is unauthorized, however, the commerce requirement may not be satisfied. Various sources suggest that the commerce nexus must be satisfied through official duties, not unauthorized conduct. *See* 29 C.F.R. § 776.10(b) (commerce nexus satisfied where employee uses communication channels "as a regular and recurrent part of his *duties*" (emphasis added)); *Kitchings v. Florida United Methodist Children's Home, Inc.*, 393 F. Supp. 2d 1282, 1292 (M.D. Fla. 2005) (suggesting that unauthorized use of the Internet is irrelevant for commerce analysis).

[2] *See also* 29 C.F.R. § 776.10(b) ("This does not mean that any use by an employee of the mails and other channels of communication is sufficient to establish coverage. But if the employee, as a regular and recurrent part of his duties, uses such instrumentalities in obtaining or communicating information . . . he comes within the scope of the Act . . . ."); *Dent v. Giaimo*, 606 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009) (fact that "job duties *included* contacting out of state insurance companies" does not satisfy commerce requirement where plaintiff fails to show those activities are "regular[ ] and recurrent[ ]"); *Zarate v. Jamie Underground, Inc.*, 629 F. Supp. 2d 1328, 1332 (S.D. Fla. 2009) (any use of the Internet alone is insufficient to satisfy commerce requirement for enterprise coverage); *Curry v. High Springs Family Practice and Diagnosis Ctr., Inc.*, No. 1:08–cv–00008–MP–AK, 2009 WL 3163221, *3 (N.D. Fla. Sep. 30, 2009) (use of instruments of interstate communications such as the Internet satisfies commerce requirement only where that use is "regular and recurring"); *Bowrin v. Catholic Guardian Soc'y*, 417 F. Supp. 2d 449, 468 (S.D.N.Y. 2006) ("[T]ypically it is the use of the interstate mails and placement of out-of-state phone calls occurring in the course of conducting an

So the question here is two-fold: Is Dean's use of the Internet regular and recurrent, and are Dean's activities on the Internet—searching and downloading recipes off foodnetwork.com and similar sites—qualitatively sufficient to constitute commerce? The first question is easily disposed of on summary judgment. Regular and recurrent use does not actually require much use; five independent uses annually may suffice. *See Boekemeier v. Fourth Universalist Soc'y in the City of New York,* 86 F.Supp.2d 280, 283, 287–88 (S.D.N.Y. 2000) (averaging between one and six purchases of supplies from out-of-state vendors for six consecutive years satisfies commerce requirement). With the standard of review, Dean satisfies the regular and recurrent use requirement. Using the Internet to develop recipes was "part of [her] work," and her main area of this "development was the daily specials." (*See* Dean Declaration at 1–3.) This suggests fairly frequent use of the Internet to download recipes.

The qualitative question is far harder. As already said, the activity must "constitut[e] interstate commerce, not merely affect[ ] interstate commerce." *Thorne*, 448 F.3d at 1266. For use of communication channels to constitute commerce, the use usually must involve "the actual *movement* of persons or things in interstate commerce." *See Thorne*, 448 F.3d at 1266 (emphasis added); *Reagor*, 501 Fed. App'x at 809; *see also* 29 C.F.R. § 779.103 ("Employees are 'engaged in commerce' within the meaning of the Act when they are performing work involving or related to the movement of persons or things . . . ."); *McLeod*, 319 U.S. at 497 ("Employee activities outside of this movement, so far as they are covered by wage-hour regulation, are governed by the other phrase, 'production of goods for commerce.' "); *Locke v. St. Augustine's Episcopal Church*, 690 F. Supp. 2d 77, 90 (E.D.N.Y.

---

organization's clerical or administrative business that appear to trigger individual coverage, if 'regular and recurrent' and a 'substantial part' of the employee's work.").

2010). Several cases find the commerce requirement satisfied where this movement, actual or prospective, occurs.[3]

There is no movement of commerce here. Dean searched for recipes on the Internet and downloaded them. She did not attempt to buy goods online. She did not attempt to sell goods online. She did not even attempt to contact people online. Lacking any actual or prospective movement of goods, the commerce requirement is not satisfied.

To be sure, though, another result is possible through narrow readings of the regulations, divorced from both the regulation itself and its drafting context. These regulations state that the commerce requirement is satisfied where a worker regularly "use[s] the mails, telephone or telegraph for interstate communication," 29 C.F.R. § 779.103, or uses these communication "instrumentalities in obtaining or communicating information or in sending or receiving written reports or messages," 29 C.F.R. § 776.10. Narrowly construed, the Internet is a communication instrumentality, and Dean regularly used it in obtaining information (recipes).

This narrow construction is not appropriate. Both regulations imply that this use must somehow be related to the movement of commerce. The first regulation begins by defining the commerce requirement as "work involving or related to the movement of persons or things" and goes on to say that this is "[t]ypically" satisfied where interstate communication occurs. *See* 29 C.F.R. §

---

[3] *See Boekemeier*, 86 F. Supp. 2d at 287–88 (assistant building engineer's using telephone and fax to "order[ ] cleaning supplies and equipment . . . from out-of-state vendors" sufficient to satisfy commerce requirement); *Centeno v. Bernuy v. Becker Farms*, 564 F. Supp. 2d 166, 175 (W.D.N.Y. 2008) (using website to offer to ship products outside of state is one reason, amongst three, supporting conclusion that commerce requirement of enterprise coverage is satisfied); *Jones v. Cadillac Condo. Ass'n*, CIV. A. No. 88–A–1855, 1989 WL 49156, *2–4, *4 n.2 (D. Colo. May 10, 1989) (janitor's using interstate mail to "sen[d] notices and receive[ ] fees" and using telephone "to contact out of state owners for various business reasons" sufficient to satisfy commerce requirement).

7

779.103. The other regulation is simply titled "Employees participating in the actual movement of commerce." *Id.* § 776.10.

Buttressing this conclusion is the regulation's drafting context. Both were drafted in an era before the Internet. *See* 29 C.F.R. § 776.10 (last amended in 1957); 29 C.F.R. § 779.103 (not meaningfully amended since 1970); *see also* The Fair Labor Standards Act as Applied to Retailers of Goods or Services, 35 Fed. Reg. 5863 (Apr. 9, 1970) (codifying § 779.103 exactly in its current form); Updating Regulations Issued under the Federal Labor Standards Act, 76 Fed. Reg. 18858 (Apr. 5, 2011) (amending all regulations under part 779, including § 779.103, to change the authority citation but not changing § 779.103's substantive text). Thus, most uses of interstate communication devices necessarily contemplated the movement or prospective movement of goods. Businesses ordered supplies by phone, and manufacturers shipped those supplies; prospective tenants called an apartment complex to inquire about vacancies, and those tenants actually moved there. Interstate communication begot physical movement. No such movement follows from downloading recipes off the Internet.

Of course, there are numerous uses of the Internet that could constitute commerce—emailing a prospective landlord, ordering cookware, or maybe even corresponding with a culinary institute for their tutelage, cf. *Thorne*, 448 F.3d at 1267 (plaintiff "did not produce evidence that he corresponded with merchants"), to name three. In short, how the Internet is used matters, cf. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 417–20 (9th Cir. 2008) (type of Internet website matters for personal jurisdiction analysis), and it does not appear that downloading free recipes off a website constitutes commerce. So individual coverage there is not.

Dean advances three contrary arguments, attempting to ascribe greater breadth to the commerce requirement. None are persuasive. First, she argues that "commercial relations between citizens and aliens are, by definition, foreign commerce . . . ." (Opposition at 5.) She goes on to cite a Fourth Circuit case and a regulation.

These authorities do not provide the expansive support Dean claims. The Fourth Circuit did define commerce to include trade between foreign citizens. *See Int'l Bancorp, LLC v. Societe des Bains de Mer et du Cercle des Estrangers a Monaco*, 329 F.3d 359, 363 (4th Cir. 2003), *cert. denied*, 540 U.S. 1106 (2004). Yet it did so not in the context of FLSA, but in the context of the Lanham Act. This difference matters. Unlike FLSA—which defines commerce more narrowly than Congress' Commerce Clause power, *Mitchell*, 358 U.S. at 211 —the Fourth Circuit found commerce under the Lanham Act to be "coterminous" with the Commerce Clause, *Int'l Bancorp, LLC*, 329 F.3d at 363–64. Thus, that broad definition does not extend here.

Second, Dean cites a regulation interpreting the statutory definition of commerce. By statute, "commerce" is defined as "trade, *commerce*, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b) (emphasis added). The regulation then concludes that, because the definition itself includes "commerce," its scope must be "at least as broad as it would be under concepts of 'commerce' established without reference to this definition." 29 C.F.R. § 776.8(b). The thrust of Dean's opposition appears to be that this regulation means that commerce must be defined the same as it is under the Commerce Clause. (*See* Opposition at 5–6 (arguing that this regulation provides no less breadth than the Fourth Circuit's definition).)

But the regulation does not compel this reading. Rather, it is urging that "no special or limited meaning is intended . . . ." *See* 29 C.F.R. § 776.8(b). Another regulation confirms that "commerce" is to be afforded its "practical meaning." *See. id.* § 776.9. It therefore expels Dean's reading that the commerce requirement is coterminous with Congress' Commerce Clause power—a technical meaning—and requires that courts ask whether the activities constitute commerce under an everyday understanding. Downloading freely available recipes does not comport with this Court's understanding of commerce.

9

Still further, note that the regulation Dean cites states that commerce is "*at least as* broad as it would be under concepts of 'commerce' established without reference to this definition." *See* 29 C.F.R. § 776.8(b) (emphasis added). If the regulation intended commerce to mean the maximum zenith permissible under the Commerce Clause, then using "at least as broad" would be nonsensical. Commerce under FLSA can be defined no broader than it is under the Commerce Clause. So for "at least as broad" to have any meaning, it cannot be referring to concepts of commerce under the Commerce Clause.

Dean's second and third arguments divide the commerce requirement into its two components—engaged in commerce and production of goods for commerce—and contend both are satisfied. First, consider the engaged in commerce argument. She, as one of many foreign citizens possessing a contract worker visa from the Commonwealth, "is herself the very embodiment of foreign commerce"—and therefore is engaged in commerce—because many like her have moved to the Commonwealth for employment. (Opposition at 9 (emphasis removed).) But this overlooks the fact that individual coverage examines only that employee's activities. So it is irrelevant if, say, an employer only hires foreign nationals from abroad or if many employees in the region are foreign nationals. What's more, it appears FLSA coverage applies equally to all persons, whether citizen or undocumented alien. *See Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F. Supp. 2d 1053, 1057–58 (N.D. Cal. 1998). Because of its equal application, Dean's immigration status should not work to extend her further benefits in the form of more expansive coverage. And finally, adopting Dean's argument could conceivably result in applying FLSA to truly local businesses solely on the basis that the employee is not a citizen.

Next, there is Dean's argument that she engaged in the production of goods for commerce. (Opposition at 10.) Her "meals . . . sustain international travelers," further aspects of commerce, and therefore are "produced 'for' commerce . . . ." (*Id.* at 11.) This does not qualify as engaging in the

10

1 production of goods for commerce. Such engagement occurs only where an employee's "work is
2 closely related and directly essential to the production . . . ." *See Thorne*, 448 F.3d at 1268. Several
3 courts have held that cooking food is not such activity. *See, e.g.*, *Casseus v. First Eagle, L.L.C.*, No.
4 07-23228-CIV, 2008 WL 1782363, *4–5 (S.D. Fla. April 18, 2008); *Thompson v. Robinson, Inc.*, No.
5 6:06-cv-771-Orl-19JGG, 2007 WL 2714091, *1, *3 (M.D. Fla. Sept. 17, 2007) (holding that line cook
6 did not engage in production of goods for commerce); *Xelo v. Mavros*, No. 03-CV-3665 (NG)(MDG),
7 2005 WL 2385724, *1, *5 (E.D.N.Y. Sept. 28, 2005) (holding that plaintiff dishwasher and food
8 deliveryman was not engaged in the production of goods for commerce). Dean does not point the
9 Court to any cases holding otherwise.

10       The regulations further support this conclusion. They indicate that orders for goods that are
11 filled in-state with the expectation or hope that they are used in-state is not the production of goods
12 for commerce. *See* 29 C.F.R. § 776.21(c)(1), (d). Here, Dean's meals apparently were ordered in
13 Saipan, prepared in Saipan, and consumed in Saipan. There is no evidence indicating that her meals
14 were, say, marketed as food for flights, which could create a legitimate expectation of foreign use.

15       Arguing to the contrary, Dean claims that some customers must have at least digested their
16 meals outside Saipan. (Opposition at 10.) This digested food, she contends, constitutes the movement
17 of "goods . . . in an altered form" in interstate commerce. (*Id.*); *see also* 29 C.F.R. § 776.21(a).

18       For this argument to have merit, digested food must be a good. It is not. Goods are "wares,
19 products, commodities, merchandise, or articles or subjects of commerce of any character, or any part
20 or ingredient thereof, but does not include goods after their delivery into the actual physical possession
21 of the ultimate consumer . . . ." 29 U.S.C. § 203(i). Digested food eludes the affirmative definition and
22 fits the negative definition: It is a product in possession of the ultimate consumer.

23 //
24 /

### 2. Enterprise Coverage

An alternative basis for FLSA's overtime and minimum wage provisions is enterprise coverage. *See* 29 U.S.C. §§ 206(a), 207(a). Among other things, this requires proving that the business had annual gross sales of at least $500,000. *See* 29 U.S.C. § 203(r)(1), (s)(1)(A)(ii). Dean alleges the existence of enterprise coverage. (*See* First Amended Complaint at ¶ 10; Opposition at 12.)

Contesting this allegation, Pacific Bellwether has submitted its tax returns—which show annual sales of less than $500,000 (ECF No.7-1 at 1–3)—and argues that this conclusively establishes the non-existence of enterprise coverage. (Reply at 6–7; *see also* Motion at 5–6.) Dean disagrees. Businesses may underreport their tax obligations, and she wishes to see if that is the case here. (*See* ECF No. 16 at 3.) But because the summary judgment motion was brought so early in the litigation, she has not yet had this opportunity. Accordingly, Dean now cross-moves for the Court to provide her sufficient time to conduct discovery. (*See* Opposition at 12–13.)

When a nonmovant shows that "it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Motions pursuant to this rule should be granted "fairly freely" where "a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case . . . ." *Burlington N. Santa Fe. R. Co. v. Assiniboine and Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003) (referencing Rule 56(f), where Rule 56(d) was previously codified); *see also* Fed. R. Civ. P. 56, Advisory Committee Notes to the 2010 Amendments ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").

This rule has been applied in contexts similar to here. Where the plaintiff lacked sufficient opportunity to conduct discovery on the defendant-business' gross sales—even when the defendant

12

provides its tax returns—courts often grant the plaintiff more time to conduct discovery. *See Pearson v. Su Ok Sin*, No. 07-61913-CIV, 2008 WL 938873, *1 (S.D. Fla. Apr. 7, 2008) (denying early summary judgment motion and allowing additional discovery under Rule 56 because plaintiff demonstrated that the business' gross sales may have exceeded $500,000); *Esquivel v. Hillcoat Properties, Inc.*, 484 F. Supp. 2d 582, 585 (W.D. Tex. 2007) (denying motion to dismiss that was converted to a motion for summary judgment in part because Rule 56 permitted plaintiffs to conduct discovery on defendant-business' gross sales); *Rivera v. Heights Landscaping, Inc.*, No. 03 C 6428, 2004 WL 434214, *2 (N.D. Ill. Mar. 5, 2004) (in ruling on motion to dismiss, granting plaintiffs additional time to conduct discovery on issue of business' gross sales to "to test the accuracy of [the business'] proffered financial information"); *see also Lopez v. Pereyra, MD, P.A.*, No. 09–60734–CIV, 2009 WL 3586907, *2–3 (S.D. Fla. Oct. 27, 2009) (holding that plaintiffs could undertake discovery on defendant-business' finances, notwithstanding the business' submitting its tax returns). Going still further, at least one court has held that a plaintiff-deliveryman's affidavit on the restaurant's gross sales alone demonstrated a genuine issue of material fact to survive summary judgment—even in the face of contrary tax returns. *See Jia Hu Qian v. Siew Foong Hui*, No. 11 Civ. 5584(CM), 2013 WL 3009389, *1, 3 (S.D.N.Y. June 14, 2013) (plaintiff's affidavit claiming knowledge of gross sales through "his experience as a deliveryman, as well as his familiarity with the business he gained by meeting twice a day with the other employees and the owner").

Here, the Court grants Dean additional time for discovery for two reasons. First, the summary judgment motion comes early in the litigation. Dean filed the original complaint in August 2013 (ECF No. 1), and Pacific Bellwether filed the summary judgment motion two months later (ECF No. 7), before even a case management conference. Thus, Dean lacked a realistic opportunity for discovery. Second, Dean has filed evidence suggesting that this discovery may be fruitful. Her affidavit declares that Pacific Bellwether's gross sales may exceed $500,000. (Dean Declaration at 3–4 (claiming

knowledge of gross sales through discussions with other employees and estimating annual gross sales of "around $474,500 to $584,000").

Pacific Bellwether's contrary argument largely rests on two cases. (*See* Reply at 6); *see also Lopez v. Top Chef Inv., Inc.*, No. 07-21598-CIV, 2007 WL 4247646 (S.D. Fla. Nov. 30, 2007); *Russell v. Continental Rest., Inc.*, 430 F. Supp. 2d 521 (D. Md. 2006). Neither case's reasoning is persuasive here. One case, *Lopez*, addresses situations where there is no Rule 56(d) motion for additional discovery, so presumably, sufficient discovery already occurred. *See generally Lopez v. Top Chef*, 2007 WL 4247646 (not discussing Rule 56(d) or requests for additional discovery). In granting defendant-restaurant's summary judgment motion, that court held that a plaintiff-cook's conclusory affidavit on gross sales will not be credited where the restaurant's tax returns indicate gross sales are substantially below $500,000. *See id.* at *1, 3.

That case meaningfully differs from here. The Court is not ruling on whether Dean's affidavit alone gets her to trial. It is ruling on whether she gets to discovery. Given the Ninth Circuit's standard on Rule 56(d) motions, she should.

The second case, *Russell*, directly addresses the issue of dismissals before discovery. That court held that the defendant-restaurant's tax returns and affidavits submitted with the motion to dismiss conclusively established that its annual gross sales did not exceed $500,000. *See Russell*, 430 F. Supp. 2d at 524. The plaintiff there requested the opportunity to conduct discovery, but the court denied it because "discovery on this matter would not lead to any genuine issues of fact . . . ." *Id.* This summary comprises that court's entire reasoning on this issue.

The Court declines to follow *Russell*. This Court cannot definitively know discovery would be fruitless. *Cf. Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999) (plaintiff-employee must be provided "opportunity to conduct discovery to challenge the credibility of the [defendant-business'] affidavit" before dismissing claim). In the very least, Dean's declaration makes it plausible that Pacific

14

Bellwether's gross annual sales exceed $500,000. Plus, the Ninth Circuit counsels district courts to freely provide discovery where a nonmovant has been deprived of it.

Finally, following *Russell* may result in dismissing meritorious FLSA claims. Imagine an unscrupulous restaurant looking to save money. It underpays employees—in violation of FLSA—and underreports its tax obligations (assume it reports annual gross sales of $400,000 rather than the actual amount of $550,000). Now suppose a dishwasher sued the restaurant under FLSA. *Russell* permits the restaurant to immediately move for summary judgment, file its fraudulent tax returns and owners' declarations, and prevail. If another underpaid employee then sues under FLSA, the same result occurs and the restaurant again escapes liability. Repeat for every aggrieved employee. In effect, *Russell* grants unscrupulous employers immunity from FLSA.

In sum, Dean deserves discovery on the issue of enterprise coverage. Accordingly, the Court denies, without prejudice, the summary judgment motion on the FLSA overtime and minimum wage claims.

## B. Retaliation Claim

In addition to her claims for minimum wage and overtime violations, Dean also brings a FLSA claim for unlawful retaliation. (*See* Complaint at 6); *see also* 29 U.S.C. § 215(a)(3). Under the retaliation provision, it is "unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter . . . ." 28 U.S.C. § 215(a)(3); *Lambert v. Ackerley*, 180 F.3d 997, 1002–09 (9th Cir. 1999), *cert. denied sub nom. Ackerley v. Lambert*, 528 U.S. 1116 (2000).

Note that, unlike the minimum wage and overtime provisions, the retaliation provision lacks an explicit reference to a commerce requirement. Pacific Bellwether contends that this limitation is

implied into the provision, and therefore, Dean's claim must be dismissed because the commerce requirement is not satisfied. (Reply at 7–11.) Disagreeing, Dean argues that the commerce requirement does not apply to retaliation claims. (Opposition at 14–17.) Both agree there is no Ninth Circuit case on point. (Reply at 7; *see generally* Opposition at 14–17.)

FLSA retaliation claims do not have a commerce requirement. Its text applies to "persons" without any mention of commerce. 29 U.S.C. § 215(a). If Congress intended the requirement to apply, it could have explicitly said so, just as it did with overtime and minimum wage claims. Further evidence for this conclusion comes from the statutory text itself. The retaliation provision applies not only to employee complaints arising "under" FLSA, but also to those complaints "*related to*" FLSA. *See* 29 U.S.C. § 215(a)(3) (emphasis added).

For similar reasons, three circuits follow the rule that unlawful retaliation claims do not have a commerce requirement. *See Sapperstein*, 188 F.3d at 856–857; *Wirtz v. Ross Packaging Comp.*, 367 F.2d 549, 550 (5th Cir. 1966); *Joseph*, 862 F. Supp. 2d at 1314, 1314 n.2 (*Wirtz* is binding precedent in the Eleventh Circuit). District courts in the two other circuits have concluded the same. *See Visco v. Aiken Cnty.*, Civ. Act. No. 1:11–01428–JMC, 2013 WL 5410134, *16 (D.S.C. Sep. 26, 2013); *Johnson v. Pleasant Green Missionary Baptist Church, Inc.*, No. 12–2493–JTM, 2013 WL 183735, *3 (D. Kan. Jan. 17, 2013).

To be sure, one district court found the commerce requirement applies to retaliation claims. *See Lamont v. Frank Soup Bowl, Inc.*, No. 99 Civ. 12482(JSM), 2001 WL 521815, *3–6 (S.D.N.Y. May 16, 2001). That court focused on FLSA's purpose—to regulate "industries engaged in commerce or in the production of goods for commerce," 29 U.S.C. § 202—and concluded that Congress did not intend to omit the requirement for retaliation claims. *See Lamont*, 2001 WL 521815 at 3–4. Likewise, Pacific Bellwether urges this Court to interpret this statute according to its legislative intent. (*See* Reply at 7–10.)

16

This Court declines to interpret a clear statute in a manner contrary to that clear meaning based on divinations of congressional intent. Even if we were to engage in such divinations, the statute's plain meaning—the omission of the commerce requirement—itself indicates a legislative intent to not apply the requirement to retaliation claims. *Cf. Caminetti v. United States*, 242 U.S. 470 (1917) (plain language is indicative of legislative intent). Thus, where one subsection possesses a temporal requirement and another does not, the Supreme Court interprets that as Congress intending the requirement not apply where omitted. *See King v. St. Vincent's Hosp.*, 502 U.S. 215, 220–21 (1991). Such is the case here. Two sections of the act enumerate a commerce requirement, and the retaliation provision does not. Therefore, Congress' omission was deliberate, intending the requirement not to apply to retaliation claims.

## V.  CONCLUSION

Based on the foregoing reasons, Defendant's motion for summary judgment is denied.

SO ORDERED this 6th day of February, 2014.

/s/ *signature*
RAMONA V. MANGLONA
Chief Judge